## JOHNSTON v. BROWN et al.

(District Court, S. D. New York. June 26, 1924.)

1. **Joint adventures** ⬅1—**Committee, formed to act for holders of state debt certificates, held not a joint adventure, but an agency for such holders.**

In 1898 a voluntary committee, called the "West Virginia debt settlement committee," was formed to act in the interest of holders of debt certificates of the state of Virginia in attempting to obtain payment or settlement by West Virginia under its assumption of an equitable portion of the debt of Virginia at the time the new state was organized. The committee appointed a firm as depository and by agreement a limited amount to cover expenses and compensation to the committee was to be assessed against certificate holders in the event of success. Through litigation and legislation a settlement was finally effected about 1920, and an assessment was made against the proceeds. In the meantime large advances had been made for expenses by the depository. There was no agreement between members of the committee to share equally profits or losses, and they were not individually liable for any expenses incurred. *Held*, that the enterprise was not one of joint adventure, but of agency for the certificate holders, and that disposition of the payment finally received rested in the collective discretion of the committee, which could not be impeached in a suit by one member for an accounting, where it was exercised in good faith.

2. **Interest** ⬅60—**Allowance of compound interest on accrued debt held legal.**

The allowance by a committee of 6 per cent. interest, compounded with annual rests, on sums which had been advanced for expenses incurred by the committee through a series of years, and without which its activities could not have been carried on, *held* legal.

In Equity. Suit by Bartlett S. Johnston against James Brown and others. Complaint dismissed.

Earl B. Barnes, of New York City, for complainant.

Harrison, Elliott & Byrd, of New York City (William Byrd, of New York City, of counsel), for defendants Brown Bros. & Co.

Sanford Robinson, of New York City, for defendants Carey, Baker, and Le Gendre.

WINSLOW, District Judge. This is an action for an accounting, brought by one member of the West Virginia debt settlement committee against the surviving members and against the members of the firm of Brown Bros. & Co. On January 1, 1861, the public debt of the state of Virginia was in excess of $33,000,000. The Civil War brought about the organization and admission to the Union of the state of West Virginia. The Constitution adopted by West Virginia in 1861 (article 8, § 8), provided, among other things, with reference to the public debt of the old commonwealth of Virginia, that an equitable proportion of said public debt of Virginia prior to the 1st day of January, 1861, should be assumed by West Virginia, and provision was made empowering the Legislature to ascertain the amount of the debt to be assumed and to provide for its liquidation.

On May 13, 1862, the General Assembly of the restored state of Virginia, recognized by Congress as the legal government thereof, consented to the formation of the state of West Virginia, as proposed by

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the Constitution adopted by the people of the latter state. West Virginia was duly admitted to the Union on June 20, 1863. Virginia found herself unable to stand the burden of her debt, and funding acts were passed from time to time as late as 1892, under which acts Virginia settled with her creditors as to two-thirds of the amount of her public debt on January 1, 1861. The remaining one-third of her public debt was represented by certificates known as "Virginia deferred certificates." These certificates recognized the existence of the debt to the holder and his representatives to the extent of one-third of the bond theretofore surrendered, and payment of the certificates was provided for therein in accordance with such settlement—

"as shall hereafter be had between the state of Virginia and West Virginia in regard to the public debt of the state of Virginia existing at the time of its dismemberment, and the state of Virginia holds such bonds so far as unfunded in trust for the holder. * * *"

These deferred certificates were issued from time to time pursuant to legislation in an amount exceeding $18,000,000. Many futile attempts were made to settle the equitable proportion of the debt of Virginia which was assumed by West Virginia. The holders of these certificates could have no hope of payment, except as West Virginia might make provision for the same.

On or about March 6, 1894, the General Assembly of Virginia enacted a joint resolution providing for the appointment of a commission of seven members, known as the "Virginia debt commission," who were authorized to negotiate and settle the proportion of the original public debt to be borne by West Virginia, subject to the request of the holders of a majority of the deferred certificates in the hands of the public, and to procure a release of Virginia from all further liability thereon, and the payment of all expenses by the certificate holders. This was followed, in 1895 and in subsequent years, down to the year 1905, from time to time, with resolutions adopted by the Legislature of West Virginia declining to enter into any negotiations with the debt commissioners of Virginia.

In 1898 certain individuals residing in West Virginia and Virginia proposed to Messrs. John Crosby Brown, George Coppell, J. Kennedy Tod, and Clarence Carey, all of New York, to form a committee to ascertain and settle West Virginia's obligation to pay its equitable proportion of the debt of Virginia as it existed on January 1, 1861. These New Yorkers agreed to act as a committee, and elected Mr. Brown chairman, and Messrs. Brown Bros. & Co. depository. Counsel to the committee were appointed.

Acting upon instructions from the committee, letters were written to the "Southern Associates," stating that one-third of the compensation of the committee after the payment of expenses would be turned over to the Southern Associates. In or about July, 1898, a formal agreement was made between the New York residents, acting as a committee, of the first part, and such certificate holders as deposited their certificates under the agreement, of the second part. This agreement provided for a named advisory board to examine any plan of settlement proposed by the committee, and other details, including as-

sessment of the charges and expenses of settlement and the compensation of the committee, not exceeding 5 per cent. on the par of certificates deposited under the agreement in case of success, and two-tenths of 1 per cent. in case of failure. The committee had power to add to their number and to fill vacancies.

Thereafter, and pursuant to an enabling act passed by the General Assembly of Virginia in 1900, the Virginia debt commission was authorized to assume control of Virginia deferred certificates pursuant to a contract to be made with the holders thereof, accepting the amount realized from West Virginia in full settlement of their claims, and if at least two-thirds of the certificates in the hands of the public issued under the act of 1871, and at least a majority of all other classes of certificates, shall be placed under its control with the advice and approval of the Attorney General of Virginia, "to take such action and institute such proceedings as may, in the judgment of said commission and Attorney General, be needful," etc., and to bring about and carry into effect a settlement. All expenses involved in connection with the matters in question were to be borne by the certificate holders.

Under this state of facts, the expenses of the Virginia debt commission, as well as the Brown committee, including the expense of the contemplated suit in the Supreme Court, were not to be borne by the state of Virginia, although the state of Virginia alone could sue. The certificate holders could not be assessed in a substantial amount until new bonds were in their hands in settlement. Any advances for the expenses to be incurred would be reimbursed in the event of recovery and satisfaction of a judgment against West Virginia. John Crosby Brown, the chairman of the committee, was also the senior member of Brown Bros. & Co., the depository. At his instance, the depository advanced, for expenses, to the Virginia debt commission, including interest to the date of final payment, the sum of $194,016.60, and to the committee, including interest to September 8, 1920, the sum of $226,794.85.

The repayment of these sums was dependent upon complete success. In case of failure, only $30,000 could have been assessed against certificate owners. From that time forward various steps were taken by the several committees and advisory board. A suit was instituted by the state of Virginia against West Virginia in the Supreme Court. The final result of the litigation and legislative enactments of both Virginia and West Virginia was the payment of $14,563,867.16 to the Virginia debt commission in settlement of the controversy. Of this sum, $13,500,000 was in bonds of West Virginia, with coupons, and cash $1,062,867.16, and interest thereon, and half the costs of the suit as taxed.

Thereafter an action in equity was begun in the circuit court of the city of Richmond for distribution of this fund by the Virginia debt commission. The complainant in this case at bar was a party defendant therein. The final decree in 1920 in this suit made provision for the payment to Brown Bros. & Co., for their compensation and advances, and also for the payment to them of cash and bonds for the account of the certificate holders. The decree in the distribution suit was ex-

ecuted by the payment of the several sums and the delivery of the bonds, and thereupon the Brown committee levied an assessment of 5 per cent. upon the face value of the deposited certificates. This assessment amounted to $718,042.13.

Out of this sum the committee, at a meeting duly called at which the plaintiff was present, voted to pay various expenses, including an account for disbursements made by Messrs. Brown Bros. & Co., the depository, after which the committee directed the distribution among the members of the committee as then constituted including the complainant and the depository. The complainant herein asks for an accounting of Messrs. Brown Bros. & Co. for their distribution of the fund, and particularly that the defendants be required to justify their claim of $226,794.85, representing alleged disbursements on behalf of the committee, and also that they justify their charge of $200,000, as allowed by the committee for services as depository.

[1] A careful study of this most voluminous record convinces the court that the complaint should be dismissed. The first proposition to be considered is whether the members of the so-called Brown committee were joint adventurers. I am convinced that the elements necessary to establish that relationship are absent. The committee was the agent and representative of the certificate holders, and, while they might receive compensation for their services in the event of complete success, there was no agreement or understanding to share profits and losses in equal or other proportions. Seven of the members of the committee died or resigned, and received no share whatever. According to the record, it is quite apparent that the members of the committee were never individually liable for the expenses of the enterprise, either individually or in a representative capacity, for advances made by Brown Bros. & Co. for the account of the Virginia debt commission, nor were they liable for advances made for the expenses of the committee. The enterprise was sponsored by Brown Bros. & Co. They gave it their credit and prestige, and while the deposit agreement provided security in the event of failure by way of assessment on the certificate holders, the amount in no event could exceed $30,000. Complainant himself has testified that he did not consider himself individually liable for expenses, or anything else.

The next question to be considered is whether the members of the committee, in distributing the fund, acted in good faith. For over 20 years the committee functioned at meetings held from time to time, by a majority vote. There were not many meetings held, but the record shows that the complainant attended 15 meetings during the period of his 18 years of membership in the committee. Brown Bros. & Co., the defendants, acted continuously and advanced large sums of money. I am convinced that the actions of the committee were in entire good faith, and the compensation fixed by the committee at its meeting, the minutes of which are before the court, was properly fixed.

The sole beneficial interest of the complainant was his share of the compensation to the members of the committee as fixed by the committee. This he has received in full. His share was the same as the other members, except that a larger amount was paid to one of the

committee in accordance with an understanding evidenced by documents in evidence that an additional amount was to be paid for the account of the so-called Southern Associates. I am satisfied that there is no evidence of bad faith, and that the action of the committee was a sufficient audit and discharge of the accounts. Complainant's contention that he has an absolute right to an undivided one-seventh of the fund, subject only to the expenses approved by him, is not supported either by the facts herein or the law applicable to such facts.

[2] One more question requires comment. Complainant contends that the committee acted illegally when it agreed to pay compound interest at 6 per cent., with annual rests, on the advances made by Brown Bros. & Co. I do not agree with this contention. The circumstances in the instant case were quite unusual, and, had it not been for the advances made by Brown Bros. & Co. over a long term of years, the entire enterprise would in all probability have failed. An agreement to pay interest on interest after it accrues is valid. In this instance, that agreement was made after the interest had actually accrued, and the consideration for it was the very advances made by Brown Bros. & Co. If, after interest has become due, an account is stated, making rests, and this is lawful, one who has paid interest on interest cannot require it back. 22 Cyc. p. 1486.

Complaint dismissed, with costs.